UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RUTH BELL THOMAS,

             Plaintiff,

    v.

THE CITY OF SEATTLE, et al.,

             Defendants.

CASE NO. C04-1342JLR

ORDER

## I.   INTRODUCTION

This matter comes before the court on Defendants' Motion for Summary Judgment Dismissal (Dkt. #13).  Having reviewed the motion together with all documents filed in support and in opposition, the court GRANTS in part and DENIES in part Defendants' motion for summary judgment.

## II.   BACKGROUND

Plaintiff Ruth Thomas filed suit under section 1983 against the City of Seattle ("the City"), R.A. Martin ("Officer Martin"), R. Gil Kerlikowske ("Kerlikowske"), and Gregory Nickels ("Nickels"), for injuries Officer Martin allegedly inflicted before an ambulance transported Ms. Thomas to Harborview Medical Center ("Harborview") for a mental health evaluation on May 2, 2002.  Officers sent Ms. Thomas to Harborview after

ORDER – 1

observing her walking dangerously close to traffic, waving her hands, and putting "hexes" on passing cars.  The parties' disputes center on Officer Martin's conduct.

Ms. Thomas contends that after voluntarily entering the ambulance, an EMT asked her for identification.  Ms. Thomas states that as she reached for her bag to obtain the identification, Officer Martin jumped in the ambulance, grabbed both of her wrists with an extremely forceful grip, pinned her down with his full weight, and caused her head to "bang against the side of the ambulance."  Thomas Decl. at 3.  As a result, Ms. Thomas claims she suffered injuries to her neck, back, and legs, a "numbness and cold sensation" in her hands, swelling in her left leg, and possible neurological damage.  Id. at 5.

Officer Martin contends that Ms. Thomas entered the ambulance voluntarily, but that officers had not searched her for weapons.  Officer Martin states that he saw Ms. Thomas quickly move for her bag and feared that she was possibly reaching for a weapon so he stepped into the ambulance and grabbed the bag from Ms. Thomas, who apparently pulled back.  Officer Martin let go of the bag after the EMT told him that Ms. Thomas was merely looking for her identification.  Officer Martin does not believe he ever touched Ms. Thomas, although he admits that he may have touched her arm.  Another Seattle Police Officer and the EMT recount a substantially similar story and do not recall Officer Martin touching Ms. Thomas.  Bolton Decl. at 2; Hansen Decl. at 2.

Harborview records from the night of the incident state that Ms. Thomas was experiencing a "hypomanic episode" upon arrival.  Bailey Decl., Ex. D.  Although it appears that Ms. Thomas did not complain of any injuries on the night of the incident, she returned to Harborview the very next day and reported injuries caused by a police officer who attacked her.  Id.  The physician found two bruises on her arm.  Id.  According to Ms. Thomas, her injuries required two visits to Harborview, treatment from

ORDER – 2

a chiropractor for five months, and consultation with a neurologist, although she provides no medical records to support her allegations. Id. at 5.

Defendants now seek summary judgment on Ms. Thomas' section 1983 and state law claims. Defendants argue that Ms. Thomas cannot show that Officer Martin's force was excessive or unreasonable and that he is entitled to qualified immunity. Defendants also argue that Ms. Thomas cannot demonstrate that a City policy, practice, or custom caused Officer Martin to violate the Constitution. Defendants further argue that Ms. Thomas cannot prove any of her state law claims. Finally, Defendants argue that because Ms. Thomas sued Nickels and Kerlikowske in their individual capacities, the court should construe Ms. Thomas' claims as a suit solely against the City.[1]

## III.   ANALYSIS

### A.   Standard of Review

Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Once the moving party meets its initial responsibility, the burden shifts to the non-moving party to establish that a genuine issue as to any material fact exists.

---

[1]In her response, Plaintiff makes no objection to the dismissal of her claims against Nickels and Kerlikowske. Pl.'s Resp. at 1 ("Plaintiff has no objection to dismissal of the claims against those defendants, Kerlikowske and Nickels, named in their represetative [sic] capacity."). Thus, the court dismisses the claims against Nickels and Kerlikowske.

ORDER – 3

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Evidence submitted by a party opposing summary judgment is presumed valid, and all

reasonable inferences that may be drawn from that evidence must be drawn in favor of

the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The

non-moving party cannot simply rest on its allegation without any significant probative

evidence tending to support the complaint.  See U.A. Local 343 v. Nor-Cal Plumbing,

Inc., 48 F.3d 1465, 1471 (9th Cir. 1995). "[A] complete failure of proof concerning an

essential element of the non-moving party's case necessarily renders all other facts

immaterial."  Celotex, 477 U.S. at 322-23.

**B.      Section 1983 Liability of Officer Martin and the City**

> **1.        Section 1983 Liability of Officer Martin for Excessive Force**

The Fourth Amendment's reasonableness standard governs section 1983[2] claims

for excessive force.  Graham v. Conner, 490 U.S. 386, 388 (1989); Smith v. City of

Hemet, 394 F.3d 689, 700 (9th Cir. 2005).  Determining whether force is reasonable

under the Fourth Amendment requires a "careful balancing of the nature and quality of

the intrusion on the individual's Fourth Amendment interests against the countervailing

government interests."  Graham, 490 U.S. at 396 (internal quotations omitted).  The court

must gauge the reasonableness of the force from the perspective of the officer on the

scene rather than with 20/20 hindsight.  Id.  The relevant factors used in determining the

reasonableness of force include the nature of the crime involved, the threat the suspect

posed, and whether the suspect was resisting arrest.[3]  Id.  Because balancing the intrusion

---

[2]Section 1983 creates a remedy for individuals whose constitutional rights are violated by
a person acting under the color of state law.

[3]These factors are not exclusive.  Courts may also consider the "availability of alternative
methods of capturing or subduing a suspect."  Smith v. City of Hemet, 394 F.3d 689, 701 (9th
Cir. 2005).  Another factor that the court may take into consideration is the mental illness of the

ORDER – 4

on an individual's Fourth Amendment interests against the government's interest "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," summary judgment in excessive force cases should be "granted sparingly." Smith, 394 F.3d at 701 (quoting Santos v. Gates, 287 F.3d 846, 852 (9th Cir. 2002); accord Liston v. County of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (noting that the reasonableness of force is "ordinarily a question of fact for the jury").  If the evidence, viewed in the light most favorable to Ms. Thomas, could support a finding of excessive force, granting summary judgment is not appropriate.  Smith, 394 F.3d at 700.

        Officer Martin argues that even under Ms. Thomas' version of the events, he did not use excessive force.   He compares the force he allegedly used to that used in Forrester v. City of San Diego, 25 F.3d 804, 805 (9th Cir. 1994), where officers arrested anti-abortion demonstrators for trespass and unlawful assembly.  After providing a verbal warning, police used pain compliance techniques to force the passively resistant demonstrators to stand up and walk.  Id. at 805-06.  As a result of the pain compliance techniques, several demonstrators received injuries ranging from bruises to a broken wrist.  Id. at 806.  The court upheld a jury's finding that the officers acted reasonably after balancing the minimal and controlled force against the government's interest in preventing trespassing and organized lawlessness, and breaking up a large group of demonstrators who posed a risk to clinic patients and staff.  Id. at 807.

        Officer Martin also relies on Jackson v. City of Bremerton, 268 F.3d 646, 649 (9th Cir. 2001), where officers attempted to arrest Jackson's son in a park, but friends and

---

detainee.   Drummond v. City of Anaheim, 343 F.3d 1052, 1057 (9th Cir. 2003).  The Ninth Circuit has held that the government's interest in using force against a mentally ill person who has not committed a serious crime is diminished.  Drummond, 343 F.3d at1057 (emphasis added) (quoting Deorle v. Rutherford, 272 F.3d 1272, 1282-83 (9th Cir. 2001)).

family fought with police in an effort to prevent the arrest.[4]  Jackson soon entered the

fight, and an officer sprayed chemical irritant in her hair after warning that she would use

irritant if Jackson did not comply with police requests.  Id. at 650.  Police then arrested

Jackson and placed her in a hot car with the windows rolled up in order to "adjust [her]

attitude." Id.  Chemical irritant ran into her eyes and ears before officers sprayed her with

water.  Id.  The Ninth Circuit held that the use of force was not excessive after balancing

the minimal intrusion (irritant in hair and face) against the government's safety interest in

controlling the large group that outnumbered police and were resisting arrest despite

warnings that police would use a chemical irritant.  Id. at 652-53.

　　　　While there is strong evidence suggesting that Officer Martin did not use any force

at all, for the purposes of this motion the court is compelled to take the facts in the light

most favorable to Ms. Thomas.  Presented with Ms. Thomas' account, a reasonable jury

could decide that Officer Martin's force was excessive when balanced with the minimal

risk of harm Ms. Thomas posed.  In contrast to Forrester and Jackson, where large crowds

of individuals justified the use of force, Ms. Thomas posed little threat.  Although Officer

Martin may have had reasonable concerns regarding the contents of Ms. Thomas' bag and

a right to search it, that interest alone did not justify the force Ms. Thomas alleges he

used.  Unlike the individuals in Forrester and Jackson who resisted arrest, Ms. Thomas

entered the ambulance on her own volition.  Finally, the Ninth Circuit has made clear that

the government's interest in safety is necessarily diminished when dealing with a

mentally ill individual who, like Ms. Thomas, has committed no crime.  Drummond, 343

F.3d at 1057.  Viewing the facts in the light most favorable to Ms. Thomas and keeping in

mind the Ninth Circuit's caveat that summary judgment in excessive force cases should

---

[4]As many as 50 friends and family were in the park with Jackson, although it is unclear
how many of them fought with police.  Jackson, 268 F.3d at 650.

ORDER – 6

be "granted sparingly," the court reluctantly denies Officer Martin's motion for summary judgment on Ms. Thomas' claim of excessive force.

### 2.    Qualified Immunity of Officer Martin

Qualified immunity is an "entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsythe, 472 U.S. 511, 526 (1985)).  The threshold inquiry in a determination of qualified immunity is whether, viewing the facts in the light most favorable to Ms. Thomas, Officer Martin's conduct violated a constitutional right. Id. at 201.  If Officer Martin did not violate the Constitution, then no further inquiry is necessary and the court should dismiss the case. Id.  However, if Officer Martin violated the Constitution, the court must then query whether the constitutional right was clearly established. Id.  A right is clearly established if a reasonable officer in Officer Martin's situation would have recognized that the conduct was unlawful. Id. at 202.

There are genuine issues of material fact as to whether Officer Martin violated a constitutional right by using excessive force, and Officer Martin's entitlement to qualified immunity will depend partly on the factual determinations of the jury.  Nonetheless, the court must also decide whether, taking the facts as true, Officer Martin violated a clearly established right "such that a reasonable officer would have known that the conduct alleged was unlawful." Drummond v. City of Anaheim, 343 F.3d 1052, 1060 (9th Cir. 2003).  Although the law governing excessive force is well established, the factual disputes prevent the court from ruling, as a matter of law, that Officer Martin reasonably believed his conduct was lawful.  As a result, the court denies Officer Martin's motion for summary judgment on the basis of qualified immunity.

ORDER – 7

### 3.   Section 1983 Liability of the City of Seattle

As a municipality, the City may be held liable under section 1983 if the execution of its custom or policy caused a municipal employee to violate an individual's constitutional rights.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-92 (1978).  To establish section 1983 liability of the City, Ms. Thomas must demonstrate that (1) Officer Martin violated one of her constitutional rights, and (2) the City's custom or policy caused the constitutional violation.  Id.

The City argues that summary judgment is appropriate because Ms. Thomas has not demonstrated that Officer Martin violated the Constitution or that the City's custom or policy caused the violation.  Ms. Thomas' sole argument against dismissal is that summary judgment would be premature because "discovery has not as yet been completed and the issues of practice, procedure, or policy are such that proof is uniquely in possession of the defendant."  Pl.'s Resp. at 8.

Fed. R. Civ. P. 56(f) provides parties with a mechanism to request a continuance of summary judgment pending completion of discovery.  The party seeking a continuance bears the burden of specifying what facts it seeks to discover and showing that the evidence actually exists.  Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir. 1990).  Courts grant motions or applications for continuances "almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence."  Burlington N. Santa Fe R.R. Co. v. The Assiniboine and Sioux Tribes of the Fort Peck Reservation, 323 F.3d 767, 774 (9th Cir. 2003) (quoting Wichita Falls Office Assoc. v. Ban One Corp., 978 F.2d 915, 919 n.4 (5th Cir. 1992)) (internal quotations omitted).  In the "absence of an application for continuance" the court may grant summary judgment if otherwise appropriate.  THI-Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d 991, 994 (9th Cir. 1980).

ORDER – 8

1
2
3
4
5
6
7
8

Ms. Thomas has not moved the court for additional time or pointed to facts in existence that she wishes to discover.  Nor has she pointed to pending discovery requests seeking City policies or to discovery requests she intends to make.  Thus, the court will not grant a continuance for further discovery on the issue of the City's liability.  Because Ms. Thomas presents no evidence of a City policy or custom that caused a constitutional violation, the court grants summary judgment in favor of the City on Ms. Thomas' section 1983 claim.

9

**C.      State Law Liability of Officer Martin and the City**

10
11
12
13
14
15

In addition to her section 1983 claim, Ms. Thomas' complaint alleges several state law claims against Officer Martin and the City as his employer: (1) assault, (2) battery, (3) outrage, (4) negligent hiring, training, retention and supervision, and (5) negligent infliction of emotional distress ("NIED").  Officer Martin and the City now seek summary judgment on Ms. Thomas' state law claims.

16

**1.      Assault and Battery**

17
18
19
20
21
22
23
24
25
26
27

Under Washington law, battery is a "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such a contact, or apprehension that such a contact is imminent"; an assault is any such act that causes apprehension of a battery.  McKinney v. Tukwila, 13 P.3d 631, 641 (Wash. 2000) (internal quotations omitted) (quoting W. Page Keeton et al., Prosser & Keeton on the Law of Torts sec. 9, at 39, 43 (5th ed. 1984)).  State qualified immunity for assault and battery is not available to an officer who uses excessive force.  Staats v. Brown, 991 P.2d 615, 627-28 (Wash. 2000).  Viewing the facts in a light most favorable to Ms. Thomas, disputed facts require a jury to decide if Officer Martin committed an assault or battery. The court therefore denies summary judgment on this issue.

28

ORDER – 9

## 2.   Outrage

To prove a claim for intentional infliction of emotional distress ("outrage") in Washington, a plaintiff must establish that (1)  the defendant intentionally or recklessly inflicted emotional distress, (2)  the conduct of the defendant was outrageous and extreme, (3) the conducted resulted in severe emotional distress, and (4) the plaintiff was the object of the defendant's actions.  Reid v. Pierce County, 961 P.2d 333, 337 (Wash. 1998);  Lund v. Caple, 675 P.2d 226, 228 (Wash. 1984); Restatement (Second) of Torts § 46 (1965).  Conduct is outrageous and extreme when it goes "beyond all possible bounds of decency" and is "atrocious, and utterly intolerable in a civilized community." Grimsby, 530 P.3d at 295.

Even taking Ms. Thomas' declaration as true and drawing all reasonable inferences therefrom, there is no evidence that Ms. Thomas experienced any emotional distress as a result of Officer Martin's conduct.  Although there is some evidence regarding her physical injuries, neither her declaration nor any medical records establish the severe emotional distress necessary for Ms. Thomas to prove the tort of outrage. Thus, the court dismisses Ms. Thomas' outrage claim.

## 3.   Negligent Hiring, Training, Retention, and Supervision

To establish a claim for negligent hiring, Ms. Thomas must prove (1) that the City knew or should have known that Officer Martin was unfit at the time of hiring, and (2) that Officer Martin caused her injury.  Carlsen v. Wackenhut Corp., 868 P.2d 882, 886 (Wash. 1994).  Ms. Thomas has not presented any probative evidence regarding the City's employment of Officer Martin, nor does Ms. Thomas request additional time to discover such facts.  Thus, the court dismisses Ms. Thomas' negligent hiring claim against the City.  Likewise, Ms. Thomas does not present any evidence, let alone

ORDER – 10

significant probative evidence, tending to support her negligent supervision or training

claims against the City.  As a result, the court grants summary judgment on these claims

The only claim that finds any support is the negligent retention claim.  In order to

prove negligent retention, Ms. Thomas must establish that the City retained Officer

Martin and knew or should have known that he was incompetent or unfit for the position.

Peck v. Sia, 827 P.2d 1108, 1110 (Wash. 1992).  Buried in Ms. Thomas' declaration is a

statement that she once saw Officer Martin conduct himself in a physically abusive

manner toward another woman.  Even assuming *arguendo* that Officer Martin was

abusive to another person, Ms. Thomas makes no attempt to establish the City's

knowledge of this incident, nor does she seek additional time in which to do so.  Thus,

the court also grants summary judgment on the negligent retention claim.

### 4.    Negligent Infliction of Emotional Distress

To establish liability for NIED under Washington law, Ms. Thomas must establish

the general negligence elements of duty, breach, proximate cause, and damages.  Gain v.

Carroll Mill Co., Inc.,  787 P.2d 553, 555 (Wash. 1990).  Ms. Thomas must also provide

medical evidence of her emotional distress.  Hegel v. McMahon, 960 P.2d 424, 431

(Wash. 1998).  Even if Ms. Thomas declared that she experienced emotional distress as a

result of the incident, which she has not, Ms. Thomas has presented no corroborating

medical evidence.  The court therefore grants summary judgment on her NIED claim.

## IV.   CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part

Defendants' Motion for Summary Judgment Dismissal (Dkt. # 13).  Ms. Thomas' only

remaining claims are her section 1983 claim against Officer Martin and her assault and

battery claim.

ORDER – 11

1    Dated this 20th day of April, 2005.

2

3

4    _____

5    JAMES L. ROBART
     United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER – 12